

MCGREGOR W. SCOTT
United States Attorney
MICHAEL D. ANDERSON
MATTHEW M. YELOVICH
KEVIN C. KHASIGIAN
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

FILED

DEC 1 2 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JEFFREY R. DAVID,

Defendant.

CASE NO. 2: 1 8 - CR - 0 2 5 3 GEB

I N F O R M A T I O N

COUNTS ONE AND TWO: [18 U.S.C. § 1343 – Wire Fraud]

The United States Attorney charges: T H A T

JEFFREY R. DAVID,

defendant herein, as follows:

## I.   **INTRODUCTION**

At all times relevant to this Information:

### A.   **Relevant Parties**

1.   Company A was a professional sports franchise in Sacramento, California

2.   Company B was a credit union headquartered in Sacramento, California, with accounts

insured by the National Credit Union Share Insurance Fund.

1       3.      Company C was a not-for-profit health plan headquartered in Oakland, California,

2  comprising a hospital system, insurance plan, and medical groups.

3       4.      JEFFREY R. DAVID was an employee of Company A who served as, among other roles,

4  chief revenue officer.

5       5.      Sacramento Sports Partners, LLC, was a limited-liability corporation owned and operated

6  by JEFFREY R. DAVID, maintaining bank accounts at a Sacramento regional bank, including one

7  ending x1761.

8       **B.      Company A's New Stadium and Naming Rights Agreements**

9       6.      In September 2016, Company A opened a new indoor arena and practice facility in

10  Sacramento.  Before doing so, Company A solicited regional and national businesses for bids to obtain

11  naming rights to the new stadium and practice facility.

12       7.      Company B won naming rights to the new indoor arena, and entered into a naming rights

13  and sponsorship agreement with a limited partnership representing Company A on June 12, 2015

14  (herein, the "Company B Original Agreement").

15       8.      The Company B Original Agreement involved various terms regarding marketing, use of

16  marks, and benefits accruing to Companies A and B.  As a part of the agreement, Company B agreed to

17  pay Company A "rights fees" of $110,000,000 over 20 years.  These rights fees were payable on July 1

18  of each contract year, with the annual amount being $6,000,000 for years 1 through 3, $5,500,000 for

19  years 4 through 17, and $5,000,000 for years 18 through 20.  JEFFREY R. DAVID negotiated large

20  parts of the Company B Original Agreement with counterparts at Company B, and had knowledge of the

21  rights fees schedule and amounts.

22       9.      Company C won naming rights to the new practice facility, and entered into a

23  sponsorship agreement with a limited partnership representing Company A in August 2015 (herein, the

24  "Company C Original Agreement").

25       10.     The Company C Original Agreement involved various terms regarding marketing, use of

26  marks, and benefits accruing to Companies A and C, as well as certain exhibits outlining separate terms,

27  such as leases, provision of healthcare services, and payment terms.  As a part of "Exhibit B" to the

28  agreement, Company C agreed to pay Company A "sponsorship payments" of $2,800,000 per year for

1    10 years.  These rights fees were payable on October 1 of each contract year.  JEFFREY R. DAVID

2    negotiated large parts of the Company C Original Agreement with counterparts at Company C, and had

3    knowledge of the sponsorship payments schedule and amounts.

## II.    SCHEME TO DEFRAUD

5        11.    From in or about October 2012 through in or about July 2016, JEFFREY R. DAVID,

6    defendant herein, knowingly devised, participated in, and executed a material scheme to defraud and to

7    obtain money by means of materially false and fraudulent pretenses, representations, and promises, and

8    the concealment of material facts.

## III.    MANNER AND MEANS

10        In furtherance of the fraud, the defendant employed the following manner and means:

11        12.    Acting as Chief Revenue Officer, JEFFREY R. DAVID exploited his role in negotiating

12    the Company B Original Agreement and Company C Original Agreement to contact his negotiating

13    counterparties at Company B and Company C, offering to renegotiate some of the terms of these

14    Original Agreements purportedly on behalf of Company A.

15        13.    In August 2015, without the knowledge or authorization of Company A, DAVID altered

16    the terms of Exhibit B to the Company C Original Agreement, to provide for an "advance payment" by

17    Company C of $4,400,000 to Sacramento Sports Partners, LLC, in lieu of any contemplated "inflator"

18    on the agreed-upon annual payments from Company C to Company A.

19        14.    DAVID then drafted and submitted, on Company A letterhead, an invoice to Company C,

20    dated August 19, 2015, billing Company C $4,400,000 for the "[Company A] Advance Payment

21    Partnership," with the payee listed as Sacramento Sports Partners at an address controlled by DAVID.

22    No one at Company A was aware of or authorized this invoice.

23        15.    Similarly, in June 2016, without the knowledge or authorization of Company A, DAVID

24    negotiated a "First Amendment to Naming Rights and Sponsorship Agreement," (herein, "Amendment")

25    to alter the terms of the Company B Original Agreement.  The Amendment provided for a new

26    $9,000,000 initial payment on July 1, 2016, followed by lower payments than the Company B Original

27    Agreement, as follows:  $6,000,000 for years 1 through 3, $5,500,000 for years 4 through 8, $5,000,000

28    for years 9 through 13, $4,500,000 for years 14 through 18, and $4,000,000 for years 19 and 20.  In

1   exchange for this new initial payment, DAVID represented on behalf of Company A, without anyone at
2   Company A's knowledge or authorization, that Company B would receive access to additional parking
3   spaces, tickets, suite spaces, and other benefits at Company A's arena.  DAVID forged the signature of
4   the president of Company A on this Amendment.

5       16.     DAVID then instructed his counterpart(s) at Company B to wire the $9,000,000 initial
6   payment to Sacramento Sports Partners, LLC, at its account ending x1761.  No one at Company A was
7   aware of or authorized these wiring instructions.

8       17.     DAVID's scheme initially involved similar conduct in smaller amounts.  Specifically, he
9   drafted invoices on Company A letterhead and sent them to Company A sponsors, listing Sacramento
10  Sports Partners as the entity billing the recipient sponsor.

11      18.     These invoices intentionally misled the recipient sponsors into believing that Company A
12  was billing the sponsors for advertising, when in fact the sponsors were paying accounts under the sole
13  control of DAVID for services not being rendered.

14                      **IV.    USE OF INTERSTATE WIRES**

15      19.     On or about the dates set forth below, in the Eastern District of California and elsewhere,
16  for the purpose of executing and attempting to execute the aforementioned scheme and artifice to
17  defraud, and attempting to do so, JEFFREY R. DAVID knowingly transmitted and caused to be
18  transmitted by means of wire communication in interstate commerce certain writings, signs, signals,
19  pictures, and sounds, as more specifically set forth below:

20

| Count | Approx. Date | Wire Description |
|-------|--------------|------------------|
| 1 | Sept. 18, 2015 | Wire transfer of $4,400,000 from Company C to account ending x1761 held by Sacramento Sports Partners, LLC |
| 2 | July 5, 2016 | Wire transfer of $9,000,000 from Company B to account ending x1761 held by Sacramento Sports Partners, LLC |

25  All in violation of Title 18, United States Code, Sections 2 and 1343.

26  COUNTS THREE THROUGH TEN: [18 U.S.C. § 1957 – Laundering Monetary Instruments]

27      The United States Attorney further charges: T H A T

28                          JEFFREY R. DAVID,

defendant herein, on or about the dates set forth below, in the State and Eastern District of California and elsewhere, did knowingly engage in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, as set forth below, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Sections 2 and 1343, all in violation of Title 18, United States Code, Sections 2 and 1957:

| Count | Approx. Date | Description of Monetary Transaction |
|---|---|---|
| 3 | Dec. 3, 2015 | $360,000 wire transfer from account ending x1761 to Escrow Company 1 |
| 4 | June 27, 2016 | $240,000 wire transfer from account ending x1761 to Escrow Company 1 |
| 5 | July 13, 2016 | $7,781,073.04 wire transfer from account ending x1761 to Escrow Company 2 |
| 6 | July 13, 2016 | $100,000 wire transfer from account ending x1761 to private jet membership company |
| 7 | Sept. 20, 2016 | $38,475.49 ACH payment from account ending x1761 to American Express |
| 8 | Nov. 9, 2016 | $90,394.06 ACH payment from account ending x1761 to American Express |
| 9 | Dec. 22, 2016 | $28,250.82 ACH payment from account ending x1761 to American Express |
| 10 | Apr. 25, 2017 | $14,021.08 ACH payment from account ending x1761 to American Express |

All in violation of Title 18, United States Code, Sections 2 and 1957.

COUNT ELEVEN: [18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft]

The United States Attorney charges: T H A T

JEFFREY R. DAVID,

defendant herein, on or about June 30, 2016, in the State and Eastern District of California, did knowingly possess and use, without lawful authority, a means of identification of another person, to wit,

Person 1, the president of Company A, during and in relation to a felony enumerated in 18 U.S.C.

§ 1028A(c), specifically, 18 U.S.C. § 1343, wire fraud, knowing that the means of identification

belonged to another actual person, all in violation of Title 18, United States Code, Section 1028A(a)(1).

FORFEITURE ALLEGATION:    [18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1.    Upon conviction of one or more of the offenses alleged in Counts One and Two of this

Information, defendant JEFFREY R. DAVID shall forfeit to the United States pursuant to 18 U.S.C. §

981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived

from proceeds traceable to such violations, including but not limited to the following:

        a.    Approximately $398,663.97 seized from Five Star Bank account number 2213510, held in the name of Sacramento Sports Partners, and

        b.    A sum of money equal to the total amount of proceeds traceable to such offenses, for which the defendant is convicted.

2.    Upon conviction of one or more of the offenses alleged in Counts Three through Ten of

this Information, defendant JEFFREY R. DAVID shall forfeit to the United States, pursuant to 18

U.S.C. § 982(a)(1), all property, real or personal, involved in such violations, and any property traceable

to such property, including but not limited to the following:

        a.    Approximately $398,663.97 seized from Five Star Bank account number 2213510, held in the name of Sacramento Sports Partners, and

        b.    A sum of money equal to the amount of money involved in the offenses, for which defendant is convicted.

3.    If any property subject to forfeiture, as a result of the offenses alleged in Counts One

through Ten of this Information, for which the defendant is convicted:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c),

1  incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendant, up to the value

2  of the property subject to forfeiture.

4  Dated:  12/12/18

MCGREGOR W. SCOTT
United States Attorney

6  By:  _____

MICHAEL D. ANDERSON
MATTHEW M. YELOVICH
KEVIN C. KHASIGIAN
Assistant United States Attorney

INFORMATION                                7

## United States v. JEFFREY R. DAVID
### Penalties for Information

**COUNTS 1–2:**        **JEFFREY R. DAVID**

VIOLATION:        18 U.S.C. § 1343 – Wire Fraud

PENALTIES:        A maximum of up to 20 years in prison; or
Fine of up to $250,000; or both fine and imprisonment
Maximum of up to 3 years of supervised release

SPECIAL ASSESSMENT: $100

**COUNTS 3–10:**        **JEFFREY R. DAVID**

VIOLATION:        18 U.S.C. § 1957 – Money Laundering

PENALTIES:        A maximum of up to 10 years in prison; or
Fine of up to $250,000 or twice the value of the property involved in the transaction, or
both fine and imprisonment
Maximum of up to 3 years of supervised release

SPECIAL ASSESSMENT: $100

**COUNT 11:**        **JEFFREY R. DAVID**

VIOLATION:        18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft

PENALTIES:        Mandatory 2 year consecutive term of imprisonment

SPECIAL ASSESSMENT: $100

**FORFEITURE ALLEGATION:**        **JEFFREY R. DAVID**

VIOLATION:        18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), and 28 U.S.C. § 2461(c) – Criminal
Forfeiture

PENALTIES:        As stated in the charging document