MCGREGOR W. SCOTT
United States Attorney
MICHAEL D. ANDERSON
MATTHEW M. YELOVICH
KEVIN C. KHASIGIAN
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:18-CR-0253 WBS |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| JEFFREY R. DAVID, | DATE: June 24, 2019<br>TIME: 9:00 a.m.<br>COURT: Hon. William B. Shubb |
| Defendant. | |

## I.   INTRODUCTION

On January 22, 2019, defendant Jeffrey David pleaded guilty to wire fraud, in violation of 18 U.S.C. § 1343, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), as charged in an information filed against him. ECF Nos. 1, 12. The charges stem from David's sophisticated execution of a major corporate fraud using his high-ranking position with a local professional sports franchise to deceive businesses across the country into sending millions of dollars to him, thinking the money was for his employer. The scope of the fraud was due solely to his brazen undertaking—acting alone in signing multimillion dollar agreements on behalf of his employer by forging the team president's signature, setting up limited liability corporations to spend the money by forging the signatures of other corporate and financial institution executives, and attempting to counsel a former colleague to destroy the evidence he accidentally left behind. His conduct merits a substantial sentence of imprisonment.

In the plea agreement between the parties, the defendant stipulated to, *inter alia*, (1) a loss amount of at least $13,429,000 caused by his fraudulent scheme, *see* ECF No. 4 (herein, "Plea Ag."), A-1; (2) a factual basis outlining how his scheme functioned, including his use of shell companies, corporate invoices, and stolen corporate executive identities from several major businesses to effectuate the scheme, his advantageous use of his executive position within a professional sports franchise to achieve such a substantial fraud, his laundering of the proceeds through luxury real estate purchases and personal expenditures, the years of fraudulent conduct against other unwitting businesses preceding the major naming rights execution of the scheme, and his attempt to instruct a former colleague to destroy evidence of his conduct, *see* Plea Ag. A-1–A-7; and (3) the applicability of various Guidelines provisions and adjustments, leading to an estimated sentencing range of 78–97 months plus 24 months consecutive under the United States Sentencing Guidelines, *see* Plea Ag. at 10.

The draft and final PSRs accorded with the parties' stipulated Guidelines provisions, with a single exception:  the Probation Officer recommended a two-level increase for David's abuse of position of trust under U.S.S.G. § 3B1.3.  *See* ECF No. 24 (final PSR, herein "PSR"), ¶ 30.  The United States offered an informal objection to this adjustment being applied because it was not stipulated to by the parties.  *See* ECF No. 24-4.  The Probation Office declined to remove the adjustment, noting a factual basis and the principle that the Probation Office and Court are not bound by the plea agreement.  *See* ECF No. 24-2.  The government continues to object to the inclusion of this two-level enhancement, consistent with the plea agreement.  However, regardless of whether the Court elects to adopt this two-level enhancement in calculating the appropriate Guidelines range or not, the government's recommended sentence remains the same:  a sentence at the low end of the Guidelines range contemplated by the parties of 102 months of imprisonment.

## II.     DISCUSSION

### A.     A Substantial Sentence at the Low End of the Parties' Estimated Guidelines Range is Sufficient but not Greater than Necessary in Light of the Sophistication and Scope of David's Scheme and the Need to Deter Similar Conduct.

The government recommends a sentence of 102 months in order to deter others and promote respect for the law given the defendant's brazen scheme.  "The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary to reflect the seriousness

of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*) (internal quotation marks and citations omitted); *accord United States v. Ressam*, 679 F.3d 1059, 1088–89 (9th Cir. 2012) (*en banc*). In doing so, this Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant," "the kinds of sentences available," the applicable Guidelines range, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1), (2)(A)(3)–(7). In white collar criminal offenses such as this one, Congress has made clear, in the legislative history to the Sentencing Reform Act, that deterrence is of particular importance. "The second purpose of sentencing is to deter others from committing the offense. This is particularly important in the area of white collar crime. Major white collar criminals often are sentenced to small fines and little or no imprisonment. Unfortunately, this creates the impression that certain offenses are punishable only by a small fine that can be written off as a cost of doing business." S. Rep. No. 98-225, at 76 (1983). Accordingly, deterrence must play an outsized role in sentencing for a considerable financial crime such as this one.

In this case, a sentence of 102 months of imprisonment, the low end of the Guidelines range contemplated by the parties in the plea agreement, would achieve the mandates of sentencing and meaningfully advance two key statutory objectives: primarily, to afford adequate deterrence, and secondarily, to promote respect for the law. As to deterrence, if this defendant received anything like the type of sentence advocated by his counsel, the message sent would be clear: it is worth risking getting caught to commit multimillion dollar frauds, because even if caught, you will not face a substantial jail term if you can repay what you stole. The purely rational actor in such a scenario would be severely temped to repeat David's feat. Such frauds can be very difficult to detect when committed through sophisticated means, as this one was, by a canny operator intent on covering his or her tracks. Given such a reality, it is a uniquely important type of case in which to stress the importance of affording adequate deterrence. Without a substantial sentence at the low end of the Guidelines range estimated by the parties, deterrence would be significantly undermined. Accordingly, whether the Court

GOVERNMENT'S SENTENCING MEMORANDUM

3

imposes the two-level adjustment for abuse of position of trust or not, the government urges the Court to impose the sentence contemplated by the parties as the low end of the estimated Guidelines range, 102 months, to afford adequate deterrence for future potential fraudsters.[1]

Furthermore, a substantial term of imprisonment of 102 months promotes respect for the law by showing that a defendant cannot buy his or her way out of the typically applicable amount of incarceration, and cannot do so tangentially by investing his stolen money in illiquid assets that happen to appreciate. While the defendant's former employer has received approximately $13.2 million to date from the civil forfeiture, *see* PSR ¶ 19, David's ability to meet his restitution obligations at the time of sentencing should not be permitted to erase the other sentencing considerations, namely, deterrence and promoting respect for the law, that augur strongly in favor of a sentence of 102 months, at the low end of the Guidelines range estimated by the parties. "Restitution is desirable but so is the deterrence of white-collar crime (of central concern to Congress), the minimization of discrepancies between white- and blue-collar offenses, and limits on the ability of those with money or earning potential to buy their way out of jail." *United States v. Treadwell*, 593 F.3d 990, 1012 (9th Cir. 2010) (quoting *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006)). In this case, that concern is central: the Guidelines could have provided for a lower sentencing range if loss was recouped, if a defendant was cooperative in such recoupment, or if a defendant's use of fraud proceeds turned out to be sound investing. They do not make any such allowances, however. As a result, this defendant should not be permitted to use restitution as a way to avoid a sentence quite near his Guidelines sentence of imprisonment. Insofar as the government's recommendation results in a downward variance from the Guidelines adopted by the Court, such a variance would be significant credit for the cooperation David offered. *See* note 1. His conduct justifies a substantial sentence to deter others who might think the risk would otherwise be worth trying, and to promote respect for the law by showing equal justice applies to those with mechanisms to repay victims and those without.

---

[1] If this Court adopts the PSR's recommended two-level enhancement for abuse of position of trust over the parties' objections, the government's proposed sentence would amount to a downward variance. Such a variance would give credit to the defendant for his cooperation in speeding the forfeiture process: it is this cooperation and speedy acceptance of responsibility that militates against a sentence in excess of 102 months, whether that number is the low end of the calculated Guidelines range or a downward variance from the range adopted by the Court at sentencing.

GOVERNMENT'S SENTENCING MEMORANDUM

4

B. **No Additional Downward Variance is Justified for Purported "Intent to Repay," "No Loss," or "Cooperation."**

In urging otherwise, and in favor of an extraordinary downward variance to the mandatory minimum, David has repeatedly cited (1) his purported intent to "repay" the victim of his fraud at some unidentified future date absent law enforcement involvement, (2) his cooperation in recovering the fraudulently-obtained proceeds for paying restitution to the victim, and (3) the resulting nature of this case being "no loss." *See* ECF Nos. 25, 24-5.  These arguments should be rejected as inconsistent with the facts of this case and the legal principles governing federal sentencing.

As an initial matter, the defendant's emphasis that he never intended to cause loss to occur to any entity is both bereft of any contemporaneous supporting evidence in this case and the type of minimizing failure to accept responsibility that typically earns a defendant more, rather than less, time in prison.  In the defendant's informal objections to the draft PSR, he offers the following justification for a downward variance:  "Mr. David never intended for any loss to occur to any entity. . . .  He had an intention of getting the original funds back into the accounts at a later time."  ECF No. 24-5 at 3.  He repeats and amplifies this stance in his formal objections and sentencing memorandum.  *See* ECF No. 25 at 1 ("[T]here was no actual or intended loss in this case"), 7 ("Mr. David always intended on returning the original money to its rightful owner and therefore there is arguably no intended loss either."), 10 ("There was no intended loss. . . .  Mr. David did not intend to inflict any loss"), 11 ("His intention was . . . to put the money [back] in the [victim]'s bank account . . . .  [H]e never intended there to be a loss."), 12 ("Here, Mr. David intended to repay the money").  There is simply no evidence to support this self-serving assertion, and it runs contrary to the extraordinary efforts he took to spend the proceeds of his fraud in a way that looked like legitimate investments from a limited liability company with a legitimate-sounding name.

Moreover, his assertion does not account for the multiple years of admitted fraudulent conduct that involved victims outside the professional sports franchise:  in the plea agreement, David stipulated that he had defrauded Companies X, Y, and Z, out of tens of thousands of dollars in 2012 and 2013, using his employer's name without its knowledge or consent to trick these companies into paying him money for nonexistent advertising rights.  *See* Plea Ag. at A-1–A-2.  How exactly the defendant was

GOVERNMENT'S SENTENCING MEMORANDUM

5

going to return this money is left unsaid, which makes sense since he never truly intended to do so.[2]  Of course, even if one assumed he had such an intent, the Ninth Circuit has noted its irrelevance to criminal fraud charges.  *See Treadwell*, 593 F.3d at 997 ("The intent to induce one's victim to give up his or her property on the basis of an intentional misrepresentation causes harm by depriving the victim of the opportunity to weigh the true benefits and risks of the transaction, regardless of whether or not the victim will suffer the permanent loss of money or property."); *accord United States v. Sawyer*, 584 F. App'x 751, 752 (9th Cir. Sept. 8, 2014) (unpub.) (collecting cases and stating that "[t]he Ninth Circuit, as well as every other circuit to address the issue, has determined that a defendant's intent to repay his or her victims is not a defense to criminal fraud charges.").  Finally, if David intended to return the money and not cause any entity any loss, he would not have instructed his former colleague to destroy the evidence of his use of that money.  But he did.  *See* Plea Ag. at A-7.  In light of the unsubstantiated nature of the defendant's self-serving claim and the evidence running contrary to it, this Court should reject it as an argument for a downward variance.

Second, the defendant posits that his cooperation in returning the money he obtained fraudulently makes this an "extraordinary" case, "a very unique circumstance" justifying a dramatic downward variance to the mandatory minimum.  ECF No. 24-5 at 3, 5; *see* ECF No. 25 at 8, 19.  This representation is incomplete.  The defendant did cooperate in the disposition of his real estate holdings to effectuate more quickly restitution being paid.  However, the United States had filed civil forfeiture complaints against those assets, and criminally seized other funds of the defendant's, before the defendant even knew of the investigation.  The government would have successfully proven that those assets were forfeitable as derived from fraud, an easier standard to meet than the proof beyond a reasonable doubt present in this case, without any cooperation from the defendant.  Accordingly, while David's cooperation in not contesting the process should be acknowledged as helpful in shortening the forfeiture timeline, it hardly justifies the sought-after variance, as the victims would have been repaid

---

[2] Nor does his sentencing memorandum explain why, if he never intended any loss to Companies B and C and therefore kept their stolen funds in a "separate investment account," ECF No. 25 at 11, he used that account to finance, *inter alia*, personal credit card bill repayment, private jet travel, and checks to his family for personal goods and services, *see* Plea Ag. at A-5.  Such expenditures are not those of someone carefully taking care of stolen funds so as to ensure full repayment at some untold future date, even if such an intent would be material to sentencing.

GOVERNMENT'S SENTENCING
MEMORANDUM

6

the fraudulently obtained money absent any cooperation from the defendant due to the government's efforts prior to his involvement and the vigilant and timely assistance and cooperation of the chief victim. Instead, the government's recommended sentence of 102 months, constituting a downward variance from the range recommended in the PSR, gives the defendant adequate consideration for his decision not to contest forfeiture and aid in its more speedy disposition.

This point dovetails with another oft-repeated line of argument from the defendant, which is that his fraud is a "no loss" case and should not be sentenced according to the Guidelines range as a result. *See* ECF No. 24-5 at 3, 5; ECF No. 25 at 9–12. But the reasons David's fraud did not result in the permanent deprivation of approximately $13.4 million from victims is not due to a difference in his culpability or one meriting less punishment—it is due to the choice of investment vehicle David had for his ill-gotten gains, and the state of that asset market at the time the fraud was uncovered. If David had invested his stolen funds in a commodity the price of which decreased, through no fault or insight of his own, prior to his being caught, it is difficult to see why he should be given more of a prison sentence for his theft of that money than if the value of the commodity happened to increase. Similarly, if the real estate market in Southern California hit a downturn between when he spent the fraud money and when investigators caught him, he would be no more or less blameworthy for his conduct—no more or less meriting of just punishment, and certainly no less deserving of a sentence that would deter others from attempting similar crimes in the future. Treating sentencing otherwise undermines respect for the law, by making one's sentence appear based on chance or market forces rather than culpability, and saps deterrent effect from sentencing, by making sentencing less certain and tempting potential wrongdoers with the thought that ability to repay leads to less prison time. The fact that David invested the stolen money in illiquid assets that performed well as an investment in the random time period before he was caught should not convert what was a multimillion dollar fraud scheme into a "no loss, no foul" sentencing proceeding. His conduct merits a sentence of 102 months, with no additional downward variance.

### III.     CONCLUSION

For the reasons stated above, the government respectfully requests that the Court reject the defendant's request for an extraordinary downward variance, and instead impose a sentence of 102

months. Such a sentence, marking a downward variance from the low end of the Guidelines range recommended in the PSR, is sufficient but not greater than necessary to achieve the statutory goals of sentencing, with particular emphasis on deterring others from committing substantial frauds such as this one.

                                           Respectfully submitted,

Dated: June 17, 2019                            MCGREGOR W. SCOTT
                                                     United States Attorney

                                   By:  /s/ MATTHEW M. YELOVICH
                                           MICHAEL D. ANDERSON
                                           MATTHEW M. YELOVICH
                                           KEVIN C. KHASIGIAN
                                           Assistant United States Attorneys